**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| JOHN F. SMITH | 3:08-CV-144-ECR (RAM) |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| vs. | **OF U.S. MAGISTRATE JUDGE** |
| JIM GIBBONS, et al., | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Edward C. Reed, Jr., Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Plaintiff's "Motion for Emergency Medical Relief and Order Restraining Harassment and Retaliation by The N.D.O.C." (Doc. #6[1].) Defendants have opposed (Doc. #17), and Plaintiff has replied (Doc. #22[2]). After a thorough review, the court recommends that the motion be denied.

## I. BACKGROUND

At all relevant times, Plaintiff John Smith ("Smith") was in custody of the Nevada Department of Corrections (NDOC) as an inmate at Northern Nevada Correctional Center (NNCC). Smith has filed a motion for a preliminary injunction seeking medical treatment for an ongoing knee condition arising from a patellectomy he received in 2005. He seeks a visit

---

[1] Refers to court's docket number.

[2] Plaintiff titles this motion as "Clarification of Defendants Answer To Motion" but is effectively a reply to the objections raised in Defendants' opposition. Therefore, it will be construed as such.

1

to an orthopedic specialist, surgery for his knee, and a proper brace. As a result of the allegedly inadequate medical treatment he received while at NNCC, Smith alleges that he routinely experiences substantial pain that significantly impacts his daily activities.[3]

## II. LEGAL STANDARD

A preliminary injunction is an "extraordinary and drastic remedy" that is never awarded as of right. *Munaf v. Geren*, --- U.S. ----, ----, 128 S.Ct. 2207, 2219, 171 L.Ed.2d 1 (2008) (citations and quotation omitted). Instead, the instant motion requires the court to "balance the competing claims of injury and . . . the effect of the granting or withholding of the requested relief." *Winter v. Natural Res. Def. Council*, --- U.S. ----, ----, 129 S.Ct. 365, 376, 172 L.Ed.2d 249 (2008) (quoting *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987)). A plaintiff seeking a preliminary injunction must establish the following: (1) a likelihood of success on the merits, (2) a likelihood of irreparable injury to the plaintiff if injunctive relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest. *Id.* (citations omitted).[4]

The Prison Litigation Reform Act (PLRA) imposes certain guidelines on the prospective relief to be granted to an inmate litigant challenging prison conditions:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be

---

[3] Smith further alleges that since he has filed his civil rights complaint, he has been subject to retaliatory conduct by prison officials in the form of unfounded disciplinary action and the confiscation of his personal property. Because these issues were not properly raised in the underlying complaint, the court has no jurisdiction to consider these claims. *See LeBoeuf, Lamb, Greene & MacRae, LLP. v. Abraham*, 180 F.Supp.2d 65, 69 (D.D.C. 2001) (citing *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994); *Stewart v. U.S. Immigration and Naturalization Serv.*, 762 F.2d 193, 198-199 (2d Cir. 1985)).

[4] Before *Winter*, the courts in this circuit applied an alternative, "sliding-scale" test for issuing a preliminary injunction that allowed the movant to offset the weakness of a showing on one factor with the strength of another. *See Beardslee v. Woodford*, 395 F.3d 1064, 1067 (9th Cir. 2005). In *Winter,* the Supreme Court did not directly address the viability of the balancing approach. *Winter*, 129 S.Ct. at 392 (Ginsburg, J., dissenting) ("[C]ourts have evaluated claims for equitable relief on a 'sliding scale,' sometimes awarding relief based on a lower likelihood of harm when the likelihood of success is very high . . . This Court has never rejected that formulation, and I do not believe it does so today."). In any event, the court will require Plaintiff to make a showing on all four of the traditional preliminary injunction requirements. Applying the balancing approach here would not lead to a different result, as Plaintiff has not made a strong showing on any single factor for injunctive relief. *See infra*.

the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). "Section 3626(a) therefore operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators – no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Gilmore v. People of the State of Cal.*, 220 F.3d 987, 999 (9th Cir. 2000).

## III. DISCUSSION

**A.  LIKELIHOOD OF SUCCESS ON THE MERITS**

A likelihood of success on the merits of the underlying claims is the first factor to consider in deciding whether to grant injunctive relief. This motion is based on the Eighth Amendment claims in the complaint alleging that the inadequacy of the medical treatment received by Smith is tantamount to cruel and unusual punishment. A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A finding of deliberate indifference involves the examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's responses to that need. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992). A "serious" medical need exists if the failure to treat a prisoner's condition could lead to further injury or the "unnecessary and wanton infliction of pain." *Id.* (citing *Estelle*, 429 U.S. at 104). Examples of conditions that are "serious" in nature include an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, a medical condition that significantly affects an individual's daily activities, or the existence of chronic and substantial pain. *McGuckin*, 974 F.2d at 1060; *see also Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000).

3

If the medical needs are serious, the plaintiff must show that the defendants acted with deliberate indifference to those needs. *Estelle*, 429 U.S. at 104. The plaintiff must demonstrate that the prison medical staff knew of and disregarded an excessive risk to his health. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they 'deny, delay, or intentionally interfere with medical treatment" or the express orders of a prisoner's prior physician for reasons unrelated to the medical needs of the prisoner. *Hamilton v. Endell,* 981 F.2d 1062, 1066 (9th Cir. 1992); *Hunt v. Dental Dept.*, 865 F.2d 198, 201 (9th Cir. 1989) (citations omitted). In making such a showing, the plaintiff should allege a purposeful act or omission by the defendant. *McGuckin*, 974 F.2d at 1060.

Assuming Smith's medical needs for his knee are serious, the court turns to the subjective prong of the Eighth Amendment analysis. Smith's allegations of deliberate indifference by NNCC medical staff do not withstand scrutiny. Turning the extensive care he has already received from Defendants on its head, Smith contends that his multiple visits to the infirmary demonstrate that he is being passed around from one provider to another rather than receiving effective treatment. He offers no reference to his medical or grievance records to substantiate this argument, and the court will not scour the more than one hundred pages he has included as exhibits to find support for this claim. Similarly, Smith asserts that his doctors are discouraged from recommending treatment for financial reasons. Again, there is nothing provided in the record to support this theory. While Smith may be dissatisfied by the fact that his doctors do not seem to be proactively treating his medical complaints, a mere difference of opinion regarding the proper course of medical treatment does not prove deliberate indifference to a serious medical need. *See Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). "Deliberate indifference entails something more than mere negligence." *Farmer*, 511 U.S. at 835-36.

To the contrary, NDOC medical staff have made reasonable efforts to address Smith's ongoing complaints. By his own admission, he has visited the infirmary more than one

4

1  hundred times and received two surgeries. Smith's medical records reveal that he is under the
2  care of an outside orthopedic specialist and that he has made approximately five visits with that
3  specialist per year since 2005[5]. This does not include visits to the infirmary while at NNCC.
4  The multiple attempts to treat his condition negate any claim that Defendants were deliberately
5  indifferent to his medical needs by denying, delaying, or interfering with treatment. *See Hunt*,
6  865 F.2d at 201. As discussed below, there is no currently prescribed course of treatment that
7  Smith is currently awaiting, and none of the relief requested by Smith is medically necessary.
8  Under such circumstances, prison officials may appropriately weigh the costs and benefits of
9  treatment in determining whether to authorize an elective procedure. *Delker v. Maass*, 843
10 F.Supp. 1390, 1400 (D.Or. 1994). Smith cannot claim a constitutional violation from the mere
11 fact that there are alternative forms of treatment for his medical condition that have not been
12 pursued. *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir.2004). This principle applies even
13 when the alternative treatment could be more effective. *See O'Connor v. McArdle*, 217
14 Fed.Appx. 81, 83 (2d Cir. 2007) ("[F]ailure to provide the more efficacious treatment . . . does
15 not, without more, rise to the level of deliberate indifference."); *Taylor v. Barnett*, 105
16 F.Supp.2d 483, 489 n.2 (E.D.Va. 2000) ("While inmates are entitled to adequate medical care
17 under the Eighth Amendment, they are not entitled to the best and most expensive form of
18 treatment." (citation omitted)). Therefore, the court finds that Smith has not demonstrated
19 a likelihood of success on the merits of his claim.

**B.  LIKELIHOOD OF IRREPARABLE INJURY**

21      The second factor for the court to consider is the likelihood of irreparable injury if Smith
22 is denied the medical treatment he is currently seeking. At the motion hearing, Smith clarified
23 that he sought a mandatory injunction ordering NDOC to provide him the following: (1) a
24 consultation with an orthopedic specialist; (2) a third surgical operation; and (3) a proper knee
25 brace.

---

[5] Smith visited with Dr. Richard Long of the Carson Orthopaedic Center seven times in 2007, five times in 2006, six times in 2007, six times in 2008, and twice in 2009 as of March of that year. (Doc. #19, Ex. B.)

5

The court notes that Smith is already under the care of an orthopedic specialist. Therefore, there is no possibility of Smith being treated by a doctor lacking the proper training to address his condition.

Regarding the need for a third surgery, at Plaintiff's most recent visit with a specialist in February 2009, the doctor noted that Smith's symptoms had two causes. First, Smith had injured a portion of his patellar ligament. The doctor concluded that "[s]urgical exploration [to treat the injured ligament] could be considered, but I not [sic] certain how effective it would be." The second problem with Smith's knee is that there are bone remnants in the area where his patella was removed. The doctor's diagnosis was that these fragments "could" be removed, but that "it would only decrease the symptoms of pain at the knee, in that area". (Doc. #19, Ex. B at 31. ) This is consistent with the doctor's finding in June 2008: "The small fragments of the remaining patella could be excised at the prison's convenience. There is no urgency here." *Id.* at 30. The specialist did not characterize surgery as medically necessary or that it would have a substantial effect on the symptoms Smith is experiencing. Therefore, there is no showing of irreparable injury from withholding surgery until the conclusion of this lawsuit, assuming Smith were to prevail.

Smith also seeks a knee brace different from the one he has been currently provided. He alleges that his current appliance is improper because it is designed for a user who still has a patella. Due to his patellectomy, Smith maintains that the brace does not provide him with adequate protection and causes him discomfort. The record indicates that he has been provided with a brace and plaster and foam pad inserts to replace the area that would otherwise be occupied by his patella. A recent entry in his medical report suggests that this is a suitable arrangement for his needs: "He will continue to use his knee splint, with the foam that Dr. Gedney has given him, to prevent dumping the tibial tuberosity . . . ." *Id.* at 31. Even assuming the brace causes Smith some discomfort, this does not rise to a constitutionally cognizable level amounting to the "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104. Therefore, there is no indication that Smith would be irreparably damaged from the absence

6

of a custom-fitted knee brace.

### C.   REMAINING FACTORS FOR PRELIMINARY INJUNCTION

The balance of hardships in this case favors Defendants. There will be no apparent irreparable injury to Smith in the absence of the requested relief for the reasons discussed above. Should this court issue the injunction, however, Defendants would assume significant financial costs for Smith's medical treatment, receiving marginal therapeutic benefit in return. Cost is a legitimate consideration when considering the adequacy of the medical care provided to an inmate, and the Constitution permits officials to decline certain kinds of expensive treatment. *Honeycutt v. Mitchell*, 2009 WL 1421444, at *4 (W.D.Okla. 2009) (citing *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006); *Reynolds v. Wagner*, 128 F.3d 166, 175 (3d Cir. 1997) (Alito, J.)). It is therefore likely that Defendants would suffer the greater hardship if the court were to grant the injunction. Moreover, the public interest would not be served by the expenditure of state funds for medical treatment of questionable value.

Because Plaintiff has not met his burden with respect to any of the factors for injunctive relief, the instant motion should be denied.

### IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **DENYING** Plaintiff's Motion for a Preliminary Injunction (Doc. #6).

The parties should be aware of the following:

1.   That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within ten (10) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

/ / /

/ / /

/ / /

7

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. Civ. P., should not be filed until entry of the District Court's judgment.

DATED: July 17, 2009.

_____
UNITED STATES MAGISTRATE JUDGE